IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| DANIEL FRONTCZAK,<br><br>       Plaintiff,<br><br>vs.<br><br>CONTINENTAL RESOURCES,<br>INC.,<br><br>       Defendant. | CV-11-75-BLG-SEH-CSO<br><br><br>**FINDINGS AND<br>RECOMMENDATION OF<br>UNITED STATES<br>MAGISTRATE JUDGE** |

Plaintiff Daniel Frontczak ("Frontczak") filed this personal injury action after falling from elevated equipment while working at an oil rig. He alleges that Defendant Continental Resources, Inc. ("Continental") breached a non-delegable duty to maintain work site safety causing his injuries. *First Am. Cmplt. (ECF 23) at ¶¶ 1, 7-11.*[1]

Two motions are pending:

    1.    Frontczak's motion for summary judgment that "Continental owed a contractual non-delegable duty to maintain and ensure the safety of the [well site] and that Continental breached that duty thereby causing [Frontczak's] injuries[,]"

---

[1]The ECF citation refers to the document as it is numbered in the Court's electronic filing system.  Citations to page numbers refer to those assigned by the ECF system.

*ECF 51*; and

2.      Frontczak's motion for partial summary judgment that
        Continental's "affirmative defense of contributory or
        comparative negligence in this case is unconstitutional as
        violating [Frontczak's] fundamental right to full legal
        redress for injury incurred in employment for which another
        person may be liable, pursuant to Article II, Section 16 of
        the Montana Constitution."  *ECF 56*.

These findings and recommendation address the first motion

listed above.  The Court will address the second motion in subsequent

findings and recommendation.  As to the first motion, having

considered the parties' briefs and materials filed in support of their

positions, the Court concludes that Frontczak's motion should be denied

for the reasons discussed below.

## I.      BACKGROUND[2]

On February 11, 2011, Frontczak was employed by Schlumberger

Technology Corp. ("Schlumberger") as an equipment operator on an oil

drilling rig near Sidney, Montana.  Frontczak was shoveling sand in a

hopper about nine to ten feet above the ground when he fell out of the

---

[2]The Court compiled the background facts from the pleadings,
Frontczak's Statement of Undisputed Facts *(ECF 52)*, and Continental's
Statement of Disputed Facts *(ECF 75)*.  Material facts are undisputed
unless otherwise indicated.

hopper and sustained injuries.

Continental was the well site operator.  Schlumberger had contracted with Continental to provide well fracturing services at the well site.  Continental's and Schlumberger's business relationship was governed by a Master Service Agreement ("MSA") dated February 28, 2000.  The MSA[3] provides, in relevant part, as follows:

> **2.    INDEPENDENT CONTRACTOR**. [Schlumberger] shall retain and exercise the authority and right to direct and control the manner in which all Services for [Continental] are performed; provided, however, that [Continental] retains the general right, but is in no way obligated, to observe [Schlumberger] in the performance of all Services contemplated hereunder. It is the express understanding and intention of the parties that [Schlumberger] shall act as an independent contractor at all times, that no relationship of master and servant or principal and agent shall exist between [Continental] and any employees, agents, or representatives of [Schlumberger]. ...  Any communications by [Continental] or its employees shall be given only to [Schlumberger's] designated superintendent, or other person in charge for [Schlumberger].
>
> **3.    OBLIGATIONS OF [CONTINENTAL]**. [Continental] shall be responsible as follows:

---

[3]The Agreement is filed UNDER SEAL.  *ECF 53 at 1-12*.

\*      \*      \*

    E.    **Safety**. [Continental] shall, at its sole cost, ensure that adequate safety gear and apparatus, complying with all applicable laws and regulations, and clear safety instructions are available in sufficient numbers at all worksites. [Continental] shall be responsible for conducting regular emergency drills and means for emergency evacuation.  In the event of injury or illness, [Continental] shall ensure that [Schlumberger's] employees, agents, subcontractors or invitees receive proper emergency medical attention, and shall arrange for transportation of [Schlumberger's] employees, agents, subcontractors or invitees to the nearest hospital or airport, as appropriate.

*Master Service Agreement (ECF 53) at 2-3.*

On July 7, 2011, Frontczak filed this action.  *ECF 1.*  In his First Amended Complaint, he claims that Continental caused him damages when it breached a non-delegable duty under the MSA to maintain work site safety.  He claims that Continental "breached [its] duties in failing to provide [Frontczak] with a safety harness and/or lanyard while shoveling sand in the hopper, in failing to install guardrails on the hopper and in other particulars."  *ECF 23 at ¶ 8.*  As noted, Frontczak now seeks summary judgment on his claim against

Continental and partial summary judgment that Continental's affirmative defense of contributory or comparative negligence violates Montana's Constitution.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Fed. R. Civ. P. 56(a) provides:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*.

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "A moving party without the ultimate burden of persuasion at trial – usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may

not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11.  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F .2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Anderson*, 477 U.S. at 248 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

## B.   Frontczak's Summary Judgment Motion on Claim Against Continental

### 1.   Parties' Arguments

Frontczak first argues that the MSA between Continental and Schlumberger imposed upon Continental a "contractual non-delegable duty to maintain and ensure the safety of the well site...." *Frontczak's*

*Br. in Support of Mtn. (ECF 54) at 2.*   He argues that, under Montana
law, the general contractor at a work site "owes a duty to provide the
subcontractor's employees with a safe place to work where the owner
and/or general contractor assumes safety duties under the controlling
contracts." *Id. at 4* (citing cases).

Frontczak argues that, under the MSA's paragraph 3.E.,
Continental "agreed to maintain and ensure the safety of the Well Site
in providing adequate safety gear and apparatus, complying with all
applicable laws and regulations, and thus, the duty of the Court is to
apply the language as written." *Id. at 5.*   He also argues that two
Continental managers – vice president of northern region production
Bradley Aman and safety manager Zack Laird – testified in their
depositions that the Agreement "requires that Continental, at its sole
cost, ensure that adequate safety gear and apparatus, complying with
all applicable laws and regulations, and clear safety instructions, are
available in sufficient numbers at all work sites[.]" *Id. at 6.*

Second, Frontczak argues that Continental breached its
contractual non-delegable duty to maintain and ensure the safety of the

well site in failing to: (1) instruct its employees respecting the
Agreement's safety requirements, *id. at 7-10*; (2) ensure that there were
guardrails on the sand hopper when Frontczak was working at an
unprotected height above four feet, *id. at 10-11*; and (3) provide
Frontczak with a lanyard and/or safety harness when he was working
at an unprotected height above six feet, *id. at 12-13*.  Frontczak argues
that Continental's breaches of its duty caused his injuries and that
"[o]nly the issue of [Frontczak's] damages remains for a jury to decide."
*Id. at 14.*

 In response, Continental argues that it did not have a non-
delegable duty to ensure the safety of all of Schlumberger's employees
for two reasons.  *Continental's Resp. Br. (ECF 74) at 10-19.*  First, it
argues that under Montana law, owners, employers, or general
contractors generally do not have a duty to prevent work site injuries to
an independent contractor's employees unless one of three exceptions
applies.  Continental argues that the exception upon which Frontczak
relies – a non-delegable duty based on contract – is inapplicable here.
It argues that Montana cases recognizing the exception "make clear

that the duty at issue must be conferred on the general contractor from the original agreement between the property owner and the general contractor" and not the "subcontract between the general contractor and the subcontractor/employer." *Id. at 11.* Here, Continental argues, Frontczak "has not pointed to any provision in any of Continental's oil and gas leases that impose such a non-delegable duty." *Id. at 13.*

Second, Continental argues that it did not owe a non-delegable duty based on contract because the MSA does not make Continental the guarantor of safety for Schlumberger's operations. *Id. at 14-19.* Continental argues that paragraph 3.E. of the MSA is "much more limited[ ]" and provides only that Continental was to ensure that adequate safety gear and instructions were available at the well sites. *Id. at 14.* Also, Continental argues, Frontczak ignores paragraph 2 of the MSA, which provides that "Schlumberger expressly and specifically retained all authority and right to control its operations, limited Continental's rights to only 'observe' performance, and restricted Continental's right to communications with Schlumberger's designated supervisor[.]" *Id.*

Continental also argues that Frontczak has provided no evidence that Continental violated the MSA.  It argues that the MSA states only that Continental must ensure that appropriate safety gear and instructions "were available" at the work site and that "[e]vidence in the record establishes [that] adequate safety gear and instructions were available on site[ ]" at the time of Frontczak's accident.  *Id. at 15-19.*

Third, Continental argues that fact issues respecting causation and Frontczak's comparative fault prevent summary judgment.  *Id. at 19.*  Continental argues that, if it is determined that it breached a non-delegable duty to provide a safe work site, it may rely on its comparative fault defense if Frontczak had a reasonable means or opportunity to avoid harm without endangering his employment or the harm was not a reasonably foreseeable consequence of the breach of the non-delegable safety duty.  *Id.*  Here, Continental argues, conflicting evidence creates fact issues respecting: (1) whether anyone told Frontczak to get inside the hopper to shovel sand, *id. at 19-20*; (2) whether adequate fall protection was available on site and Frontczak simply failed to use it thus violating his own company's rules regarding

use of fall protection, *id. at 20-21*; and (3) whether supervisors from Schlumberger or Continental were aware that Frontczak was standing in the hopper, *id. at 21*.

Fourth, Continental argues that, if it is determined that the MSA is ambiguous and imposes upon Continental the non-delegable duty that Frontczak contends, "the Court [should] reform the contract to accurately reflect how companies, in every day practice, handle safety in the oil field operations, as well as under federal OSHA regulations." *Id. at 21-22.* It argues that the parties' true intentions were that: (1) "Schlumberger was responsible for providing the particular safety equipment needed for its own specialized operations, and for supervising Schlumberger employees' work and safety there[,]" *id. at 23-25* (2) no one from Continental was authorized to tell any Schlumberger employees what to do nor would anyone expect that Continental would install guardrails on the hopper because Schlumberger would not allow another company to modify its equipment, *id. at 25-26*; and (3) OSHA regulations require employers to equip their own employees with appropriate protective equipment,

ensure their safety at the work site, and monitor and correct any safety violations, *id. at 26-27.* For these reasons, Continental argues, the MSA should be reformed to reflect the actual practices of the parties and OSHA regulations. *Id. at 28.*

In reply, Frontczak argues that: (1) Montana law supports his argument that the MSA imposes upon Continental a non-delegable duty to ensure work site safety, *Frontczak's Reply Br. (ECF 79) at 1-3*; (2) Montana law prohibits Continental from blaming Schlumberger, which is immune from liability, because Frontczak was covered by Worker's Compensation, *id. at 3-6*; (3) the MSA provides that Continental was the guarantor of safety for the entire well site, *id. at 6-7*; (4) Continental breached its non-delegable duty because its managers have no idea what Continental did to ensure adequate safety gear and apparatus were available in sufficient numbers at the work site, *id. at 7-10*; (5) comparative negligence is not available to Continental as a defense because Frontczak had no reasonable way to avoid the hazard of working in the sand hopper without endangering his employment and there is no fact issue that Continental's breach of

its non-delegable duty to ensure safety caused Frontczak to be injured in a fall, *id. at 10-11*; and (6) any alleged industry custom or practice has no relevance because the MSA's language governs Continental's responsibilities at the worksite, *id. at 11-12*.

## 2.   Analysis

Generally, to prevail on a negligence claim, a plaintiff must "establish that the defendant owed a legal duty, and there existed a breach of that duty, causation, and damages." *Newman v. Lichfield*, 272 P.3d 625, 631 (Mont. 2012) (citing *Poole ex rel. Meyer v. Poole*, 1 P.3d 936, 939 (Mont. 2000)).  Relevant to the case at hand, Montana's general rule respecting work site negligence claims provides that, "absent some form of control over the subcontractor's method of operation, the general contractor and owner . . . are not liable for injuries to the subcontractor's employees." *Cunnington v. Gaub*, 153 P.3d 1, 5 (Mont. 2007) (citing *Shannon v. Wright*, 181 Mont. 269, 275, 593 P.2d 438, 441 (1979)).  Three exceptions exist: "(1) where there is a nondelegable duty based on a contract; (2) where the activity is 'inherently or intrinsically dangerous;' and (3) where the general

contractor negligently exercises control reserved over a subcontractor's work." *Id*. (citing *Umbs v. Sherrodd, Inc.*, 805 P.2d 519, 520 (Mont. 1991)).

Here, Frontczak alleges in his First Amended Complaint that Continental's liability for his work place injuries stems from all three exceptions to the general rule. *ECF 23 at ¶ 9.* In his summary judgment motion, however, Frontczak relies only on the first exception. *See ECF 51 at 1* (asking the Court to determine that "Continental owed a contractual non-delegable duty to maintain and ensure the safety of the [well site] and that Continental breached that duty thereby causing [Frontczak's] injuries"). Thus, the Court does not address herein the other two exceptions to the general rule.

Whether a legal duty exists and the scope of any such duty are questions of law. *Dukes v. City of Missoula*, 119 P.3d 61, 63 (Mont. 2005). "Liability may be based on a nondelegable duty of the owner [or contractor for injuries to the subcontractor's employees] only when a contractual provision establishes that the owner has assumed responsibility for initiating, maintaining, and supervising safety

precautions." *Fabich v. PPL Montana, LLC*, 170 P.3d 943, 949 (Mont.

2007) (citing *Beckman v. Butte-Silver Bow County*, 1 P.3d 348, ¶¶ 34-35

(Mont. 2000)).  In determining whether a contractual provision imposes

such a duty, Montana courts adhere to the following guidance from the

Montana Supreme Court:

> A contract must be so interpreted as to give effect to the
> mutual intention of the parties as it existed at the time of
> contracting, so far as the same is ascertainable and lawful.
> When a contract is in writing, the parties' intentions are to
> be determined from the writing alone, if possible.  The whole
> of a contract is to be taken together so as to give effect to
> every part if reasonably practicable, each clause helping to
> interpret the other.  It is [a] well-established principle of
> contractual construction that in interpreting a written
> instrument, the court will not isolate certain phrases of the
> instrument to garner the intent of the parties, but will grasp
> the instrument by its four corners and in the light of the
> entire instrument, ascertain the paramount and guiding
> intent of the parties.

*Krajacich v. Great Falls Clinic, LLP*, 276 P.3d 922, 926 (Mont. 2012)

(citations, quotations, and parenthetical statements omitted)

Applying these authorities to the case at hand, the Court

concludes that Frontczak's summary judgment motion should be

denied.  First, the Court is not persuaded by Frontczak's argument that

the MSA's language imposes upon Continental a broad non-delegable

duty to maintain and ensure the safety of the well site.  Frontczak

relies entirely on the MSA's paragraph 3.E., which provides in

pertinent part only that:

> [Continental] shall, at its sole cost, ensure that adequate
> safety gear and apparatus, complying with all applicable
> laws and regulations, and clear safety instructions are
> available in sufficient numbers at all worksites.

*ECF 53 at 3.*

Under this provision's plain and unambiguous language,

Continental is contractually bound only to ensure that adequate safety

gear, apparatus, and clear safety instructions are available at the work

site.  It does not provide, as Frontczak argues, that Continental agreed

"to maintain and ensure the safety of the Well Site[.]"  *ECF 54 at 2.*

Nor does it impose upon Continental the responsibility for "initiating,

maintaining, and supervising safety precautions" to trigger the

contractual non-delegable duty exception to Montana's general rule

that contractors and owners are not liable for injuries to a

subcontractor's employees.  *See Fabich*, 170 P.3d at 949; *Beckman*, 1

P.3d at ¶¶ 34-35.  To require more from Continental under this

provision would be to insert language into the MSA that does not exist

and to impose upon Continental contractual obligations to which it did not agree.  This the Court cannot do.  *See, e.g., Eschenbacher v. Anderson*, 34 P.3d 87, 91 (Mont. 2001) ("Courts have no authority to insert or delete provisions of a contract where the contract's provisions are unambiguous.") (citation omitted).

Additionally, in seeking a determination that the MSA's paragraph 3.E. imposes upon Continental a non-delegable duty to ensure the safety of the work site, Frontczak overlooks the MSA's paragraph 2.  It, as noted above, provides that Schlumberger "shall retain and exercise the authority and right to direct and control the manner in which all Services for [Continental] are performed" and that Continental only "retains the right, but is in no way obligated, to observe [Schlumberger] in the performance of all Services ...." *ECF 53 at 2.*  This provision, and the contract provisions taken together, cannot reasonably be read to impose upon Continental any duty, right, or authority to control Schlumberger's operations and employees or their safety at the work site.

Second, although Continental did contractually agree to ensure

that adequate safety gear and apparatus and clear safety instructions were available at the worksite, the Court concludes that summary judgment is not appropriate as to this more limited contractual obligation because genuine issues of material fact exist respecting breach and causation.

For example, Frontczak alleges that Continental: (1) failed to provide him with adequate fall protection in accordance with the MSA and OSHA and other industry regulations; and (2) failed to provide adequate safety instructions. *ECF 54 at 10-13.* In support of these allegations, Frontczak offers the deposition testimony of Continental employees Aman, Laird, Kelly Buxbaum, and Jason Walter. All testified that they had not seen the MSA prior to the date of Frontczak's accident. *Id. at 7.* Frontczak maintains that because these Continental employees were unaware of Continental's obligations under the MSA, Continental "took no precautions to ensure worker safety" thereby causing his fall and injuries. *Id. at 10, 11, and 13.*

Continental, on the other hand, has presented evidence that: (1) adequate safety instructions were available to all Schlumberger

-19-

employees at the work site; and (2) adequate safety apparatus, gear, and instructions were available at the work site at the time of Frontczak's fall.  *Id. at 15-16* (citing Brown deposition testimony).

For all of the foregoing reasons, the Court concludes that summary judgment is inappropriate and Frontczak's motion should be denied.

## III.   <u>CONCLUSION</u>

Based on the foregoing, IT IS RECOMMENDED that Frontczak's motion for summary judgment that Continental owed a contractual non-delegable duty to maintain and ensure the safety of the well site and that Continental breached that duty thereby causing Frontczak's injuries *(ECF 51)* be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service

hereof, or objection is waived.

DATED this 6th day of June, 2013.

/s/ Carolyn S. Ostby
United States Magistrate Judge